| | |
|---|---|
| TEAMSTERS LOCAL UNION 480, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-00178 |
| ) | Judge Aleta A. Trauger |
| UNITED PARCEL SERVICE, INC. ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM

The defendant has filed a Motion to Dismiss (Docket No. 15), to which the plaintiff has filed a Response in Opposition (Docket No. 20) and an Addendum thereto (Docket No. 27), and the defendant has filed a Reply (Docket No. 28). For the reasons stated herein, the Motion to Dismiss will be granted.

# BACKGROUND

## I. The Union's Allegations[1]

### A. Grievance Procedures

The plaintiff, Teamsters Local Union 480 ("Union") is the duly certified, exclusive bargaining representative for employees of the defendant, United Parcel Service, Inc. ("UPS"), a company that provides transportation, logistics, and financial services. The Union and UPS are parties to a collective bargaining agreement composed of a National Master Agreement and a Southern Region Supplemental Agreement, effective from December 19, 2007 through July 31,

---

[1]Unless otherwise noted, all facts are drawn from the Union's Complaint, including the exhibits thereto. (*See* Docket No. 1, Compl.)

1

2013 (collectively, the "CBA"). (*See* Compl., Ex. A (CBA excerpts)).[2]

Article 7 of the CBA, which falls within the National Master Agreement portion of the CBA, provides that "authorized representatives of the Union may file grievances alleging violation of this Agreement under local grievance procedures or as provided herein." Article 8 sets forth a "National Grievance Procedure," which identifies a process for handling "[a]ll grievances and/or questions of interpretation arising under the provisions of this National Master Agreement," a process that may culminate in binding arbitration. However, "[a]ny grievance that does not raise an issue of interpretation of a Master Agreement Article or Section shall be resolved pursuant to the local, state and area grievance procedures set forth in the applicable Supplements . . . ." (CBA Art. 7, § 5.)

Article 51 of the CBA, which falls within the Southern Region Supplement portion of the CBA, outlines area-specific grievance procedures. Section 1 contains several paragraphs relating to strikes and lockouts, stating, in relevant part, that "[t]he Union and the Employer agree that there shall be no strikes, lockouts, tie-up or legal proceedings without first using all possible means of a settlement provided for in this Agreement, of any controversy which might arise." Section 1 also contains several paragraphs concerning grievance procedures, as follows:

> A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of the provisions of this Agreement.
>
> Grievance procedures may be invoked only by authorized Union representatives or the Employer.

---

[2]The parties have filed and relied upon excerpts from the CBA. The record does not contain the full CBA. The parties have not asserted that any unfiled portions of the CBA are relevant to the instant motion.

2

> In the event of any grievance, complaint, or dispute [,] it shall be handled in the following manner:
>
> 1.   The employee shall report it to the employee's shop steward in writing within five (5) working days. The steward shall attempt to adjust the matter with the supervisor within forty-eight (48) hours.
>
> 2.   Failing to agree, the shop steward shall promptly report the matter to the Union which shall submit it in writing and attempt to adjust the same with the Employer within fifteen (15) days.
>
> 3.   If the parties fail to reach a decision or agree upon a settlement in the matter in any Local Union area, it shall be submitted within fifteen (15) days to the Southern Region Area Parcel Grievance Committee ["SRAPGC"].
>
> 4.   At the request of the Local Union, a monetary grievance settlement will be paid by separate check.

(*Id.*) (bracketed acronym added).

Section 2 of Article 51 outlines further grievance procedures. It contains several paragraphs describing the composition of the SRAPGC and the composition of SRAPGC panels asked to hear a grievance.[3] Section 2(c) states that "the decision of a majority of the [SRAPGC] panel hearing the case shall be binding on all parties. Decisions reached at each step of the grievance procedure including the Supervisor-Steward level shall be final and binding."

Section 3 of Article 51 also specifies as follows:

> If any grievance or dispute cannot be satisfactorily settled by a majority decision of the panel of the SRAPGC and Deadlock Panel, then the grievance shall be submitted to an arbitrator through the Federal Mediation and Conciliation Service by either or both persons within five (5) days. It is agreed that the Arbitrator is empowered to hear and decide the deadlock [sic] case even if only (1) of the parties submits to Arbitration, or, if one (1) of the parties fails to appear at the hearing or to present evidence.

---

[3]The SRAPGC and grievance panels thereof include union and employer representatives.

> The Arbitrator shall have sole authority to apply the terms of this Agreement, and to render a decision on any grievance coming before the Arbitrator, but shall not have the authority to amend or modify this Agreement. . . . The decision of the arbitrator shall be final and binding on the parties and employees involved. In the event that the losing party fails to abide by the arbitrator's decision, or that either party refuses to submit to the arbitrator's jurisdiction, the other party shall have the right to take all legal or economic recourse.

(*Id.*)

### B. Specific Grievances at Issue

Prior to June 2010, the Union filed numerous grievances concerning potential violations of the CBA with respect to "Shifters," a class of employees who apparently drive semi-tractor trailers at a UPS loading facility.[4] Following "discussion and negotiation" between the Union and UPS, the parties, at an unspecified point in the grievance process, settled certain of these grievances on June 16, 2010. (*See* Compl., Ex. B (hereinafter " June 2010 Settlement Agreement")).[5] At any rate, in the agreement, the Union agreed to withdraw with prejudice certain grievances in return for UPS's assent to several terms relating to the "Shifter Extra/Coverage Work at the White Creek Facility."[6]

The Union alleges that UPS has breached the Shifter Settlement Agreement in various

---

[4] The record contains limited detail concerning the nature of these grievances.

[5] The version of the June 2010 Settlement Agreement attached as Exhibit B to the Complaint appears to omit at least one exhibit referenced therein. However, neither party contends that any portion of the June 2010 Settlement Agreement other than that contained in the record is material for purposes of the Motion to Dismiss.

[6] Those conditions were as follows: (1) post two new 22.2 jobs for bid in the shifter classification on June 21, 2010; (2) post an "Interest List" on a monthly basis for 22.2, 22.3, and part-time shifts to indicate interest in extra/coverage work opportunities; (3) offer extra/coverage shifter work opportunities to full-time 22.2 and 22.3 employees before part-time employees; and (4) post shifter bids on or before June 21, 2010 with additional premium start times. The record contains limited discussion of the meaning of these conditions.

4

respects, such as by failing to post "interest lists" on a monthly basis, continuing to utilize seasonal Shifters, and improperly laying off part-time Shifters, among other violations. (Compl. ¶¶ 11-18.) The Union also alleges that "UPS's' breach of the Settlement Agreement constitutes a violation of the arbitration provisions of the CBA." (*Id.* ¶ 23.) Furthermore, the Union alleges that, "because [it] has withdrawn the relevant grievances in reliance on the Settlement, it cannot now seek arbitration of these grievances." (*Id.* ¶ 19.) The Union also conclusorily alleges that it "has attempted to discuss the failure of UPS to comply with the settlement terms to which it agreed, to no avail." (*Id.* ¶ 20.)

The Union requests a judgment enforcing the Settlement Agreement against UPS and an award of costs. (*Id.* ¶¶ 27-28.)[7]

---

[7]In support of its Motion to Dismiss the Complaint, UPS initially submitted and relied on certain materials outside the pleadings. (*See* Docket No. 18, Declaration of Matt Webb; Docket No. 16, Def. Mem. at pp. 3-4, 7-8.) UPS argued that these materials, which related to four unfair labor practice charges by the Union and the pending arbitration of a grievance filed on behalf of a Shifter, demonstrated that the claims at issue here were already the subject of extra-judicial proceedings. In its Response to the Motion to Dismiss, the Union asserted that (1) three of the four referenced NLRB charges sought relief related to a separate settlement agreement unrelated to the June 2010 Settlement Agreement; (2) the Union filed the fourth NLRB charge, which did relate to an alleged breach of the June 2010 Settlement Agreement, in an "exercise of caution" (apparently for limitations purposes), but later withdrew the charge after determining that UPS's' alleged breach of the settlement terms did not itself constitute an unfair labor practice; and (3) the then-pending arbitration concerned a grievance filed on behalf a Shifter *after* UPS and the Union had entered into the June 2010 Settlement Agreement. Thus, the Union has essentially represented that the additional materials relied upon UPS in support of its Motion to Dismiss are irrelevant.

In its Reply, UPS does not address the Union's representations, let alone contest them. The court construes UPS's' silence as agreement that these materials are not relevant to the disposition of its motion. Accordingly, the court will not consider these materials any further. At any rate, even without reference to these materials, the court finds that it lacks subject matter jurisdiction over this case for the reasons set forth herein.

5

B.     The Parties' Positions

Pursuant to Fed. R. Civ. P. 12(b)(1), UPS argues that the case should be dismissed for lack of subject matter jurisdiction because, pursuant to the CBA, the Union must submit this dispute through out-of-court grievance procedures before seeking court intervention. In response, the Union argues that this court has jurisdiction to enforce the June 2010 Settlement Agreement because (1) the settlement constitutes a "final and binding" settlement that courts must enforce; and (2) the Union withdrew with prejudice the grievances subject to the June 2010 Settlement Agreement, thereby foreclosing the Union from seeking further relief through the grievance process.[8] In response, UPS argues that the June 2010 Settlement Agreement is not enforceable in federal court at this stage and also maintains that "the alleged breach of the settlement agreement is arbitrable." (Docket No. 16 at p. 8.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs dismissal of lawsuits for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Id.* Here, although not stated by

---

[8]The Union also asserts in conclusory terms that it "made every effort to attempt to obtain the compliance of UPS before taking the step of commencing this action." (Docket No. 20 at p. 8). However, as with the Complaint, the Union does not specify what steps were allegedly taken. At any rate, the parties appear to agree that the Union did not attempt to utilize the CBA grievance procedures with respect to UPS's' alleged breach of the June 2010 Settlement Agreement.

6

the parties, the court construes UPS as asserting a facial attack.⁹  A court evaluating a facial attack must consider the allegations of fact in the complaint to be true, reflecting "a similar safeguard to that employed under 12(b)(6) which governs motions to dismiss."  *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999) (overruled on other grounds); *Gentek*, 491 F.3d at 330.

## ANALYSIS

### I. Applicable Law

#### A. LMRA, CBA Grievance Procedures, and Settlement

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (2012), provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ."  Although § 301 of the LMRA permits district courts to hear contract disputes between a union and an employer under appropriate circumstances, § 203(d) provides that "[f]inal adjustment by method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement."

There is a strong federal policy in favor of the finality of arbitration in resolving labor disputes by grievance procedures adopted by the parties.  *Malone v. U.S. Postal Serv.*, 526 F.2d

---

⁹As noted herein at FN 7, UPS initially filed and relied on certain evidence outside of the pleadings, but has since implicitly conceded that this evidence is not relevant to the disposition of the pending motion.  The remaining materials relied upon by the parties, including excerpts from the CBA, were attached to the Complaint and are properly considered part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.")

7

1099, 1104 (6th Cir. 1975).  However, "it is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties.  If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration."  *Bakers Union Factory v. ITT Cont'l Baking Co., Inc.*, 749 F.2d 350, 353 (6th Cir. 1984) (quoting *United Mine Workers of Am., Dist. No. 2 v. Barnes & Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir. 1977)).  Therefore, "if the parties provide that means other than arbitration will conclusively resolve their differences, a determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award."  *Barnes & Tucker*, 561 F.2d at 1096.  On the other hand, while courts have jurisdiction to enforce collective bargaining contracts, "where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute."  *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987); *see also United Mine Workers of Am. Dist. No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 811 (3d Cir. 1981) ("Federal courts are bound to exercise the utmost restraint to avoid intruding on the bargained-for method of dispute resolution . . . . If the court has any doubt, the parties should be returned to their grievance procedure.")

  With respect to the settlement of grievances submitted through mandatory grievance procedures, if a settlement agreement reached short of arbitration "is final and binding on the parties," it is entitled to enforcement in the federal courts.  *Bakers Union*, 749 F.2d at 355 (citing *Consolidation Coal*, 666 F.2d at 809 and *Barnes & Tucker Co.*, 561 F.2d at 1096).  Furthermore, "even if [a] settlement agreement is not final and binding in the sense that it can be enforced in

8

federal court without first having been submitted to an arbitrator, the settlement agreement still is binding on the arbitrator." *Id.*

The parties have cited to a host of decisions, both inside and outside of the Sixth Circuit, involving whether a settlement agreement was subject to enforcement in federal court without further resort to otherwise mandatory grievance procedures. The only Sixth Circuit decision relied upon by the parties is *Bakers Union*, which, although not precisely on point, contains persuasive guidance in several respects.

### B. *Bakers Union*

In *Bakers Union*, an employer, ITT Continental Baking Company ("ITT"), suspended an employee, Tolbert, after Tolbert appeared on the job intoxicated multiple times. *Id.* at 351. Pursuant to the parties' collective bargaining agreement, Tolbert's union filed a grievance on his behalf, thereby initiating a multi-step grievance procedure. *Id.* At the third step – the last before arbitration – the union and the company entered into a "last chance" settlement of the pending grievance, under which ITT agreed to rescind Tolbert's suspension in return for his conformance with several conditions (including alcohol abuse treatment), the violation of which would result in discharge. *Id.* After Tolbert violated the terms of the last chance agreement by missing the mandatory treatment sessions, ITT discharged him under the terms of the settlement. *Id.* at 351-52.

The union filed a grievance concerning the discharge, ultimately resulting in arbitration. *Id.* at 52. In the arbitration, the arbitrator found that Tolbert understood the terms and conditions of the settlement, that he had violated them, and that there was "just cause" for discipline. *Id.* However, the arbitrator found that, notwithstanding the settlement terms, the remedy of

discharge was "too severe" under the circumstances of the case. *Id.* The arbitrator therefore ordered ITT to reinstate Tolbert, which ITT refused to do. *Id.* The union filed suit to compel ITT to abide by the arbitrator's decision, and the district court granted that request. *Id.* ITT appealed, contending that the arbitrator had exceeded the scope of his authority in refusing to honor the terms of the settlement agreement. *Id.*

The "central issue" on appeal was whether the arbitrator had authority to disregard the explicit terms of the prior settlement agreement between ITT and the union. *Id.* at 353. The Sixth Circuit held that the arbitrator did not have authority to disregard the settlement terms by reinstating Tolbert. *Id.* at 356. It reasoned that "[p]arties who reach a settlement pursuant to a formal grievance procedure have not bargained for an arbitrator's construction of the collective bargaining agreement: they have bargained for their own construction." *Id.* at 354. The court "embrace[d] a presumption that parties who reach a settlement agreement pursuant to the terms of a collective bargaining agreement do not intend that an arbitrator may amend the terms of the settlement agreement." *Id.*

The court observed that cases in other jurisdictions supported its holding that the arbitrator was bound by the terms of the settlement agreement. First, the court observed that, "if [a settlement] agreement is final and binding on the parties" under the terms of the applicable collective bargaining agreement, then a settlement agreement reached short of formal arbitration "is entitled to enforcement in the federal courts . . . . ." *Id.* (citing *Consolidation Coal*, 666 F.2d at 809 and *Barnes & Tucker*, 561 F.2d at 1096).[10]

---

[10]Notably both of the cases cited by the Sixth Circuit in support of this proposition involved collective bargaining agreements that explicitly provided that settlements of grievances filed thereunder were "final and binding" on the parties, thereby precluding further arbitration

10

Case 3:12-cv-00178   Document 29   Filed 09/13/12   Page 10 of 18 PageID #: 122

Second, the Sixth Circuit stated that "additional case law supports the conclusion that even if the settlement agreement is not final and binding in the sense that it can be enforced in federal court without first having been submitted to an arbitrator, the settlement agreement is still binding on the arbitrator." *Id.* at 355. The court cited to several decisions in which courts had remanded actions involving settlement agreements under the assumption (either express or strongly implied) that the arbitrator would be bound by the terms of the applicable settlement agreement on remand. *Id.* at 355 (citing *Consolidation Coal*, 666 F.2d at 809-810 (compelling arbitration on basis that settlement agreement was vague); *Office & Prof'l Emps. Int'l Union, Local 9 v. Allied Indus. Workers Int'l Union*, 397 F. Supp. 688 (E.D. Wis. 1975) (compelling arbitration, where plaintiff disputed whether a settlement had even been reached in the first place), *aff'd*, 535 F.2d 1257 (7th Cir. 1976); and *Int'l Union of Operating Eng'rs, Local Union No. 564 v. Dow Chem. Co. Tx. Div.*, 348 F. Supp. 1149 (S.D. Tex. 1972) (compelling arbitration, where dispute over settlement agreement was itself arbitrable)). With respect to *Dow Chemical*, the Sixth Circuit observed that the *Dow Chemical* court "refused to enforce the settlement

---

concerning their subject matter. *See Consolidation Coal*, 666 F.2d at 808, 808 n.3 (quoting collective bargaining agreement: "Settlements reached at any step of the grievance procedure shall be final and binding and shall not be subject to further proceedings under this Article except by mutual agreement"); *Barnes & Tucker*, 561 F.2d at 1097 (stating that both governing collective bargaining agreements "provide that settlements reached at any step of the grievance procedures shall be final and binding on both parties."). The CBA here contains no such provision. In its Addendum in Opposition to UPS's Motion to Dismiss, the Union relies on *United Glass & Ceramic Workers of N. Am., AFL-CIO v. ASG Indus., Inc.*, 417 F. Supp. 89 (E.D. Tenn. 1976), a pre-*Bakers Union* decision in which the district court found, *inter alia*, that it had jurisdiction to enforce a settlement agreement. Like *Consolidation Coal* and *Barnes & Tucker*, *Ceramic Workers* is readily distinguishable from the present case, because the applicable collective bargaining agreement explicitly stated that "[a]n agreement reached at any step of the grievance procedure *** shall be final and binding on all parties." *Ceramic Workers*, 417 F. Supp. at 92 (asterisks in original).

11

agreement because 'this dispute over the settlement provisions is in itself arbitrable by the terms of the collective bargaining agreement.',", and that "the question to be decided on remand [in *Dow Chemical*] was not the merits of the underlying controversy; rather, the question was 'whether the Union is correct in its assertion that the company has breached the settlement agreement.'" *Bakers Union*, 740 F.2d at 355 (quoting *Dow Chem.*, 348 F. Supp. at 1153).

Based on these principles, the Sixth Circuit determined that the arbitrator had exceeded his authority by reinstating Tolbert despite the terms of the settlement agreement authorizing his discharge. *Id.* at 356. The court also stated as follows: "Finally, we wish to make explicit that our decision does not give parties license to by-pass the arbitration procedure in favor of direct access to the federal courts . . . . *[A]n arbitrator may determine whether the settlement agreement has, in fact, been breached . . . .*" *Id.* at 356 (emphasis added).

The *Dow Chemical* decision, discussed approvingly by the Sixth Circuit in *Bakers Union*, is analogous to this case. In *Dow Chemical*, the union had filed a grievance on behalf of an employee of Dow Chemical, alleging that the company had violated provisions of the collective bargaining agreement concerning thirty-minute lunch breaks for certain types of employees. 348 F. Supp. at 1150-51. After proceeding through several steps in the mandatory grievance process – but before arbitration – the parties entered into a written settlement agreement concerning the grievance. *Id.* at 1151. After Dow Chemical allegedly breached the settlement terms, the union sought to enforce the settlement agreement in federal court, rather than submitting the issue through the out-of-court grievance procedures. *Id.* The relevant provisions of the collective bargaining agreement between the parties stated as follows:

> It is further agreed that if the Plant Management and Plant Union Committee
> cannot mutually settle any controversies, differences, or disputes that arise

12

regarding discharges or dismissals of non-probationary employees, or
interpretations of this agreement, the Company and the Union, upon request of the
Union to arbitrate such controversies, differences, or disputes, shall meet within
14 calendar days and name two representatives each as arbitrators and, within five
days after the appointment of said four arbitrators, an attempt shall be made
mutually to settle such controversies, differences, or disputes by the four named
arbitrators.

*Id.* at 1151 (emphases omitted). The court reasoned that the union's dispute with the employer as to whether it had breached the settlement agreement was "[s]urely . . . a 'controversy, difference or dispute' concerning 'the interpretation of this agreement' and therefore, arbitrable." *Id.*[11] Because "this dispute over the settlement provisions is in itself arbitrable by the terms of the collective bargaining agreement," the court found that the union would have to assert it through the grievance procedures and accordingly dismissed the case for lack of jurisdiction. *Id.* at 1153.

The relevant language of the collective bargaining agreement at issue here is substantially

---

[11]A number of courts, including *Dow Chemical*, have found that disputes concerning the breach of a settlement agreement essentially amounts to an "interpretation" or "application" of the collective bargaining agreement. As discussed in *Dow Chemical*:

[Courts] appear to view the arbitrability of release and settlement questions as
obvious. While interpreting the language of the release is not, strictly speaking, a
matter of interpreting the collective bargaining contract, the process would also
involve an examination of the negotiations and other events regarding the
grievance which preceded the execution of the release. This is a matter within the
arbitrator's submission and to which he is expertly at[t]uned.

348 F. Supp. at 1152-53 (emphases omitted) (quoting *L.O. Koven & Bro., Inc. v. Local Union No. 5767, United Steelworkers of Am. AFL-CIO*, 381 F.2d 196, 204-205 (3d Cir. 1967)); *see also Local 300, Nat'l Postal Mail Handlers Union, AFL-CIO-CLC v. U.S. Postal Serv.*, No. 93 CIV. 2720 (SS), 1994 WL 658393, at *5-*6 (S.D.N.Y. Nov. 21, 1994) (finding that, where CBA contained broad arbitration clause, CBA was silent as to whether settlements were final and binding, and union had settled grievance at first step in grievance procedure, alleged breach of settlement agreement "implicated" the CBA and, therefore, was arbitrable). Here, UPS appears to concede this point by arguing that the Union's claims are arbitrable under the CBA.

13

similar to that at issue in *Dow Chemical*:

> A grievance is hereby defined to be *any* controversy, complaint, misunderstanding or dispute arising as to interpretation, application, or observance of *any* of the provisions of this Agreement.
>
> . . .
>
> In the event of *any* grievance, complaint, or dispute[,] it *shall* be handled in the following manner: . . .

(CBA, Art. 51, § 1) (emphases added). Thus, the CBA contains a broad arbitration clause that appears to be at least as broad as that at issue in *Dow Chemical*. The Union's claim that UPS breached the June 2010 Settlement Agreement plainly constitutes a "controversy, complaint, misunderstanding or dispute" relating to the "interpretation, application, or observance of the CBA," which the union "*shall*" assert through the grievance procedure. Indeed, UPS itself concedes that the Union's claim for breach of the settlement agreement is arbitrable.

The Union appears to have been particularly concerned that, because it agreed to withdraw certain grievances with prejudice as part of the June 2010 Settlement Agreement, it would be foreclosed from enforcing the settlement terms within the grievance procedures specified by the CBA. However, as the court has found – and as the defendant concedes – that is simply not the case: the Union's complaint that UPS breached the settlement agreement is itself grievable and, if necessary, arbitrable. *See Bakers Union*, 740 F.2d at 356 ("[A]n arbitrator may determine whether the settlement agreement has, in fact, been breached . . . .") The court is obligated to defer to the parties' chosen method for resolving their grievances, which is the grievance procedure outlined in the CBA. Therefore, the court lacks subject matter jurisdiction to hear the Union's claim, which has not been submitted through that process.

In reaching its holding, the court relies on UPS's representation that the Union's claim is

14

indeed subject to the CBA grievance procedures.  Accordingly, assuming that the Union pursues its claim following dismissal, the court presumes that UPS will not argue in the grievance process that the Union's claim is *not* actually grievable.  That is, the court will dismiss the case with the understanding that the Union has a non-judicial means for resolving its claim on the merits pursuant to the CBA, including, if necessary, final and binding arbitration.  At any rate, under *Bakers Union*, any adjudicator (including an arbitrator) hearing the Union's claims in the grievance process will be bound to enforce the terms of the June 2010 Settlement Agreement.  *See Bakers Union*, 749 F.2d at 355-56.

### III.    Additional Arguments

The court is not persuaded by the Union's argument that the CBA provides that settlements are "final and binding" to the same extent as an arbitration award.  The CBA provides that "*decisions* reached at each step of the grievance procedure are final and binding." (CBA Art 51, § 2(c)).  As an initial matter, from the context of this provision, it is not clear whether "final and binding" manifests an intent to have a federal court enforce decisions reached at any level of the grievance procedures; indeed, if that were the case, a federal court seemingly could be asked to enforce the decision of a shop steward before the grievance process had even been finalized.  However, the court need not make any decision in this regard because the provision only applies to "decisions."  Giving the term its plain meaning, a private settlement agreement between the parties does not constitute a "decision" and, therefore, is not subject to the "final and binding" language.

The Union also points out that federal courts have enforced certain settlement agreements as a "contract" enforceable under LMRA § 301, typically in the context of settlement agreements

15

reached outside of or without reference to a collective bargaining agreement. *See, e.g.*, *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 231 (3rd Cir. 1999); *Am. Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co.*, 62 F.3d 574 (3d Cir. 1995). While settlement agreements reached outside of a collective bargaining agreement may be enforceable as labor contracts, that proposition does not affect the result here. The CBA provides a specific out-of-court grievance procedure governing a broad set of potential disputes – including the claim presented here – which the court is obligated to enforce. Thus, the court need not consider whether, in the absence of the CBA, the Union could enforce the settlement agreement directly in federal court.

Finally, the Union also argues, primarily based on the Fourth Circuit decision in *Nat'l Post Office Mail Handlers Local No. 305, LIUNA, AFL-CIO v. U.S. Postal Serv.*, 594 F.2d 988 (1979), that forcing the Union to utilize the grievance procedures to enforce the settlement agreement would "subject the Union and the employees it represents 'to an endless, fruitless succession of grievance complaints . . . never [realizing] the benefits of an award.'" (Docket No. 20 at p. 12) (brackets in original) (quoting *Nat'l Post Office.*, 594 F.2d at 991-92). However, the circumstances in *National Post Office* are readily distinguishable from the allegations here. In *National Post Office*, the union alleged that it had employed the grievance procedures required by the collective bargaining agreement and had prevailed before reaching the arbitration stage, apparently entering into settlement agreements regarding some of the grievances. *Id.* at 990. After the employer failed to honor these settlement agreements, the union filed multiple class-action grievances seeking to enforce the settlements and again prevailed. Notwithstanding the union's success, the employer continued to refuse to implement the settlement decisions

16

wantonly, willfully, maliciously, and in bad faith. *Id.* The union then sued in federal court to enforce the settlement agreements and the defendant opposed, arguing that the union was obligated to grieve the defendant's (repeated) alleged breaches of the settlement agreements yet again. *Id.* at 990-91.

Under these extenuating circumstances, the Fourth Circuit excused the Union's failure to exhaust its remedies under the collective bargaining agreement. *Id.* at 991-92. The court observed that, under Supreme Court precedent, an employee and the union acting on his behalf must at least "attempt" to use the remedy provided by the contract, *id.* at 991 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. at 652), but, "[w]here contractual remedies are unsatisfactory or unworkable by reason of misconduct of the employer or of the union, exhaustion of those remedies is unnecessary." *Nat'l Post Office*, 594 F.2d at 991 (citing *Vaca v. Sipes*, 386 U.S. 171, 185-86, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967)). Because the defendant had "remain[ed] adamant in its refusal to implement grievance settlements, aggrieved employees would be subjected to an endless, fruitless succession of grievance complaints and never realize the benefits of an award. *Further exhaustion manifestly would be ineffective*." *Nat'l Post Office*, 594 F.2d at 991-92 (emphasis added).

Here, by contrast, the Union does not allege that it even attempted to submit its dispute through the grievance procedure before seeking court intervention. Furthermore, the Union has not alleged sufficient facts to demonstrate that resort to the CBA grievance procedure would be an exercise in futility. Therefore, without foreclosing the Union from asserting a futility argument in the future based on a sufficient record, the court finds that the Union's allegations do not establish that the Union should be excused from utilizing the grievance procedures

17

specified in the CBA.

## **CONCLUSION**

For the reasons set forth herein, the court lacks subject matter jurisdiction and this case will be dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge